**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ILUMINADA LEMBERT-MELENDEZ, et al. | Civ. No. 13-4908 (ES)(JAD) |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| CL MEDICAL, INC., et al., | |
| Defendants. | |

I. **INTRODUCTION**

This matter comes before the Court via a motion filed by Defendant Uroplasty, Inc., to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) or, in the alternative, to transfer this matter to the Southern District of Florida for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Pursuant to Fed. R. Civ. P. 78, the Court decided this motion without oral argument.

For the reasons set forth below, the Court finds that venue in this district is improper and therefore will transfer this matter to the Southern District of Florida pursuant to 28 U.S.C.

1

§ 1406(a)[1] and Fed. R. Civ. P. 12(b)(3). The Court will deny as moot the motion to dismiss for lack of personal jurisdiction.

## II. BACKGROUND

### A. Relevant Facts

#### i. The Parties

Plaintiff Iluminada Lembert-Melendez alleges various injuries resulting from her experience with the I-Stop pelvic mesh device.[2] The I-Stop pelvic mesh device was manufactured "for the treatment of female urinary incontinence." See Am. Compl., Apr. 9, 2014, at ¶ 16, D.E. 23.

The record indicates that the parties reside in different states. For instance, Plaintiff lived in Florida until October of 2012, when she moved to New Jersey with her husband. See Joint Discovery Letter, Jan. 31, 2013, at 2, D.E. 17; see also Smith Certification in Opp. to Def.'s Mot. to Dismiss ("Smith Cert.") at ¶ 12, Aug. 4, 2014, D.E. 33. Plaintiff currently lives with her husband in New Jersey. See Am. Compl. at ¶ 1. Defendant CL Médical SARL is a French

---

[1] Defendant Uroplasty, Inc. seeks transfer under 28 U.S.C. § 1404(a), which "presupposes that the court has jurisdiction and that the case has been brought in the correct forum." Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007). Because, as explained below, the Court concludes that venue in this district is improper, it will instead transfer this case under 28 U.S.C. § 1406(a). See id.

[2] In addition to the product liability claims, Mrs. Lembert-Melendez asserts claims for: (i) breach of implied warranty; (ii) breach of express warranty; (iii) fraud; (iv) fraudulent concealment; (v) negligent misrepresentation; and (vi) negligent infliction of emotional distress. See Am. Compl., Apr. 9, 2014, at ¶¶ 119-158, D.E. 23. Mr. Melendez, who is Mrs. Lembert-Melendez's husband, is the other named Plaintiff in this case. He mainly alleges loss of consortium due to his wife's various injuries. See id. at ¶¶ 159-160. The Court shall refer to Mrs. Lembert-Melendez as "Plaintiff" because her alleged injuries are the basis for this case.

2

corporation, which manufactured the I-Stop pelvic mesh device. See Am. Compl., at ¶ 5. Defendant CL Medical Inc. is a Delaware corporation with its corporate headquarters in Massachusetts, and it marketed, sold, and distributed the I-Stop device on behalf of CL Médical SARL in the United States. See id. at ¶¶ 2-3, 7.

Defendant Uroplasty is a medical corporation, with its principal place of business in Minnesota. See Reynolds Certification in Support of Def.'s Mot. to Dismiss ("Reynolds Cert."), July 8, 2014, at ¶ 2, D.E. 30. Uroplasty's business relationship with CL Médical SARL apparently began on February 15, 2006, when the parties executed a Distribution Agreement whereby Uroplasty would also sell the I-Stop devices in the United States. See id. at ¶ 3. That relationship likely ended in 2007 because Uroplasty asserts that it last sold an I-Stop device in that year. See id.

### ii. Where Plaintiff's Claim Arose

The important events regarding this case occurred in two locations: Florida and New Jersey. Crucially, the events forming the basis of this case mainly occurred in Florida. For instance, Plaintiff confirms that on May 9, 2007, the I-Stop device was surgically implanted at clinic located in Weston, Florida. See Am. Compl., at ¶ 19; Smith Cert., at ¶ 13. Plaintiff also asserts that Uroplasty was the specific "agent that sold and distributed the I-STOP® device to Plaintiff's hospital and/or surgeon." Am. Compl., at ¶ 11.[3] More specifically, Plaintiff alleges

---

[3] Plaintiff also asserts that Uroplasty did business "in the State of New Jersey through its agent and representative Jeffrey Segal, M.D." Am. Compl., at ¶ 9. Defendant, however, has submitted a certification stressing that Dr. Segal has at "no time . . . worked for or represented Uroplasty, Inc." See Reynolds Cert., at ¶ 8. Because Plaintiff has offered no evidence contradicting Defendant's assertion about Dr. Segal, the Court rejects Plaintiff's allegation as stated in the Amended Complaint.

3

that the I-Stop device was defective when it was surgically implanted. See id. at ¶¶ 109, 114. It is undisputed that Plaintiff was a Florida resident at the time of her surgery. See Joint Discovery Letter, at 2, D.E. 17.[4]

The record illustrates that events surrounding Plaintiff's discovery of the I-Stop device's alleged failure occurred in New Jersey. Plaintiff, for example, claims that she first learned about the alleged failure of the I-Stop device five years after it was implanted, from one of her New Jersey doctors. See Pl.'s Opp. Br at 3, D.E. 32; see also Smith Cert. at ¶ 15, D.E. 33. Plaintiff was a New Jersey resident at the time because she moved back to this state in October of 2012. See Joint Discovery Letter, at 2, D.E. 17. On May 29, 2013, the I-Stop device was surgically removed in New Jersey. See Am. Compl. at ¶ 24; Smith Cert. at ¶ 16.

### B. Procedural History

On August 14, 2013, Defendant CL Médical SARL removed this case from the Superior Court of New Jersey, Law Division, Bergen County, to the District Court of New Jersey. See Notice of Removal, Aug. 14, 2014, D.E. 1. Afterwards, Defendants individually filed motions to dismiss the Complaint for lack of personal jurisdiction, failure to state a claim, and failure to plead the fraud allegations with particularity. See Def. CL Médical SARL's Mot. to Dismiss, Aug. 21, 2013, D.E. 3; Def. CL Medical Inc.'s Mot. to Dismiss, Sept. 4, 2013, D.E. 8.[5] On May

---

[4] In its submissions, Uroplasty has repeatedly stated that Plaintiff purchased the I-Stop device in Florida. See Def.'s Mot. to Dismiss at 2, 13, 20, 21, July 8, 2014, D.E. 30; see also Def.'s Reply Br., Aug. 8, 2014, at 9, 10, D.E. 34. Tellingly, the Complaint, Amended Complaint, and Plaintiff's Opposition to Defendant's Motion to Dismiss, do not mention either where Plaintiff purchased the I-Stop device, or where the device was sold. Despite the high probability that the device was purchased and sold in Florida, especially because Plaintiff was unquestionably a Florida resident when the device was implanted, the Court makes no express finding as to that issue. See Joint Discovery Letter, at 2, D.E. 17.

[5] These motions to dismiss were administratively terminated by the Honorable Esther Salas, on

4

5, 2014, Plaintiffs essentially conceded that this Court lacked personal jurisdiction of Defendants CL Médical SARL and CL Medical, Inc., when they stipulated to dismiss them from this case without prejudice. See Stipulations of Dismissal, May 5, 2014, D.E. 24-25.

After obtaining leave, Plaintiffs filed the Amended Complaint on April 9, 2014. See D.E. 23. The Amended Complaint primarily adds Defendant Uroplasty as a party. See id. By stipulation, Uroplasty's time to respond was extended through July 8, 2014. See Stipulation, July 8, 2014, D.E. 28.

### III. ARGUMENTS

#### A. Defendant

Uroplasty seeks to transfer this case to the Southern District of Florida for two main reasons.[6] First, Uroplasty stresses that the operative facts surrounding Plaintiffs' core allegations occurred in Florida and not in New Jersey. See Def.'s Mot. to Dismiss at 2, D.E. 30. According to Uroplasty, the removal of the I-Stop device is the sole relevant event that occurred in New Jersey rather than Florida. Id. at 22. Uroplasty also raises certain public and private factors in favor of transferring this case to the Southern District of Florida, including that the relevant evidence and witnesses are mainly located in Florida, and that because of its smaller docket, federal cases generally proceed to trial much faster in Florida than in New Jersey. See id. at 22-23; 25-26.

---

January 13, 2014, because the motions raised issues concerning jurisdictional discovery. See Memorandum and Order, Jan. 13, 2014, D.E. 16.

[6] The parties do not dispute that diversity subject matter jurisdiction is proper in this case.

### B. Plaintiffs' Opposition

Plaintiffs assert that this case should remain in this district because the failure of the I-Stop medical device, which is the "center of gravity of the dispute," occurred in New Jersey. See Pl.'s Opp. Br. at 6, D.E. 32. Plaintiffs also underscore that: (i) Mrs. Lembert-Melendez is a New Jersey resident who recently filed for bankruptcy in this state; (ii) she has received treatment for kidney cancer in New Jersey since 2013; (iii) any out-of-state witnesses concerning the implantation of the I-Stop medical device or Uroplasty's corporate conduct, may nonetheless appear via video conference at any court proceeding; (iv) Plaintiff's medical records, which are located in Florida, are easily accessible and can be produced in New Jersey; and (v) this case causes no significant administrative burden on the Court because it is a routine product liability action. See id. at 5-7.

### C. Defendant's Reply

In its reply, Defendant argues that Plaintiffs have conceded that this case's material documents and witnesses are actually located in Florida. See Def.'s Reply Br., Aug. 8, 2014, at 10, D.E. 34. Uroplasty also asserts that even though Plaintiff has various health issues, she has not submitted any proof that she cannot travel to Florida and attend prospective court proceedings. See id. The reason for the lack of evidence on that point is, according to Defendant, that Plaintiffs continue owning property in Florida. See Schwartz Certification in Further Support of Def. Mot. to Dismiss ("Schwartz Cert."), at ¶ 3, Aug. 8, 2014, D.E. 34. Defendant, finally, argues that given the absence of contrary evidence, Plaintiffs have conceded that the Southern District of Florida will likely adjudicate this case toward trial faster than this district because Florida's docket is far less congested. See id. at 10-11.

6

## IV. LEGAL STANDARD

### A. Venue

The Third Circuit has recognized that "on a motion for dismissal for improper venue under Rule 12 the movant has the burden of [proof]." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). When considering a motion under Federal Rule of Civil Procedure 12(b)(3) this Court must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." Bockman v. First Am. Marketing Corp., 459 Fed. Appx. 157, 158 n.1 (3d Cir. 2012).

Cases filed in the wrong venue may be transferred under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). Generally, transfer under Section 1404(a) is appropriate "where both the original and the requested venue are proper." Jumara v. State Farm Ins., Co., 55 F.3d 873, 878 (3d Cir. 1995). This means that if the original venue is improper, the Court must then turn to 28 U.S.C. § 1406(a), which specifically deals with that issue. See 28 U.S.C. § 1406(a).

Under Section 1406(a), a civil matter filed in the "wrong division or district shall [be dismissed], or if it be in the interest of justice, [transferred] to any district or division [where that matter] could have been brought." 28 U.S.C. § 1406(a). Transferring a case under Section 1406(a) is within a court's sound discretion. See Lafferty, 495 F.3d at 75 n.3. Courts that transfer cases under Section 1406(a) need not analyze the public and private factors typically considered under Section 1404(a); instead, courts "must simply determine a venue in which the action originally could have been brought that serves the interest of justice." de Rojas v. Trans States Airlines, Inc., 204 F.R.D. 265, 269 (D.N.J. 2001). Notably, courts "may transfer a case under Section 1406(a) regardless of whether personal jurisdiction exists over the defendants." Telesis

Mergers & Acquisitions, Inc. v. Atlis Fed. Servs., Inc., 918 F. Supp. 823, 829 (D.N.J. 1996).

28 U.S.C. § 1391 governs venue for all civil actions. Specifically, under Section 1391(b), a civil action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.[7]

Often in product liability matters, "a plaintiff's claims arise in [plaintiff's] home district." Lehr v. Stryker Corp., No. 09–2989, 2010 WL 3069633 at *4 (E.D. Pa. Aug. 4, 2010). Traditionally, the important acts and omissions regarding product liability claims are: (i) where the faulty product was used; and (ii) where Plaintiff's injuries occurred. See In re Consol. Parlodel Litig., 22 F. Supp. 2d 320, 326 (D.N.J. 1998) (ruling that action arose in plaintiff's home districts, where the drug at issue was marketed and consumed, even though defective drug was manufactured in New Jersey); see also Lehr, No. 09–2989, 2010 WL 3069633 at *4 (transferring case where operative facts occurred in transferee district where the marketing, sale, and use of a pain pump occurred); Elwell v. SmithKline Beecham Corp., No. 06–3020, 2007 WL 1237957 at *3 (E.D. Pa. Apr. 25, 2007) (concluding that most of the case's events occurred in Vermont because the use

---

[7] Because, as detailed below, the Court finds that this action may continue in the Southern District of Florida, section 1391(b)(3) does not apply, and ultimately cannot confer venue.

8

and injury relating to the drug occurred there).

### B. In Personam Jurisdiction

Personal jurisdiction may be exercised under two distinct theories: general or specific jurisdiction. Weber v. Jolly Hotels, 977 F. Supp. 327, 331 (D.N.J. 1997). The Supreme Court recently clarified that courts may assert general jurisdiction over a corporation if that corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Daimler AG v. Bauman, 134 S.Ct. 746, 751 (2014). Regarding corporations, "the place of incorporation and principal place of business are [paradigm] bases for general jurisdiction." Id. at 760.

To determine whether specific personal jurisdiction may be exercised, the Third Circuit has suggested a three-factor test: (i) the defendant must have "purposefully directed" its activities at the forum state; (ii) the plaintiff's claim must "arise out of or relate to" at least one of defendant's specifically directed activities in the forum state; and (iii) the courts may analyze other factors "to ensure that the assertion of jurisdiction otherwise "comport[s] with fair play and substantial justice." Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotations and citations omitted).

## V. ANALYSIS

### A. Venue

A review of the record indicates that venue is improper in the District of New Jersey under each part of Section 1391. First, Section 1391(b)(1) does not confer venue because Uroplasty does not reside in New Jersey. A defendant corporation has residency

9

for the purposes of venue "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Because as discussed in greater detail below, the Court concludes that it does not have personal jurisdiction over Uroplasty, by extension, section 1391(b)(1) cannot properly confer venue.

Second, venue in this district is necessarily improper under Section 1391(b)(2) because the record demonstrates that "a substantial part of the events or omissions giving rise to the claim" occurred in Florida and not in New Jersey. The Third Circuit has emphasized that events or omissions supporting a claim must be "substantial," and that events or omissions with only "some tangential connection with the dispute in litigation are not enough." Cottman Trans. Sys., Inc., v. Martino, 36 F.3d 291, 294 (3d Cir. 1994). To assess "whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." Id. at 295.

Plaintiff offers two unavailing arguments in support of New Jersey as the venue where a substantial amount of the acts or omissions concerning her claims occurred. For one, Plaintiff argues that her claims arose in this state because New Jersey was where "all the elements of her cause of action became known and [when she] had the benefit of reasonable medical support." Pl.'s Opp. Br., at 6, D.E. 32 (emphasis added). In support of her position, Plaintiff relies on Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 437 (1987). Reliance on Vispisiano for that proposition, however, is misplaced because that case concerned the application of the "discovery rule" in a toxic tort matter. In other words, unlike here, Vispisiano dealt with the accrual of a toxic tort claim, and whether

10

that claim was time-barred. See 107 N.J. 420-24. Because the major issue before the Court is the proper venue for this case, the location where Plaintiff's alleged injuries occurred, and the location where the I-Stop device failed, are both far more important than the precise time when Plaintiff first learned of her injuries. See Parlodel Litig., 22 F. Supp. 2d at 326.

Next, Plaintiff's assertion that the location of the I-Stop device's failure categorically determines the "center of gravity of [this] dispute" is similarly incorrect. See Pl.'s Opp. Br., at 6 (relying on Park Inn Int'l., L.L.C. v. Mody Enterpr., Inc., 105 F. Supp. 2d 370, 377-78 (D.N.J. 2000). Although the court in Park Inn denied a motion to transfer the case from New Jersey, it did so because of a controlling forum selection clause, which neither exists nor is at issue in this case. See Park Inn, 105 F. Supp. 2d at 377-78. Moreover, in Park Inn, the court concluded that a "substantial part" of the events giving rise to that breach of contract claim occurred in New Jersey because the contract was reviewed and approved in this district. Id. at 376. Conversely, here, the parties essentially agree that the I-Stop device was implanted in Florida at the time that Plaintiff resided there. See Am. Compl., at ¶ 19; Smith Cert., at ¶ 13; Def. Mot. to Dismiss, at 2, Joint Discovery Letter, at 2.

Ultimately, the record demonstrates that the crucial event in this case was the implantation of the I-Stop device, which occurred in Florida. While the location of the device's failure is important, it is not dispositive. See, e.g., Parlodel Litig., 22 F. Supp. 2d at 326. In this case, Plaintiff alleges that the I-Stop device was defective when the device was surgically implanted. See Am. Compl., at ¶¶ 109, 114. It is undisputed that Plaintiff

11

was a Florida resident at the time of her surgery, which also occurred in Florida. See Joint Discovery Letter, at 2, D.E. 17; Am. Compl., at ¶ 19. Plaintiff, in other words, does not allege that the device became defective when she moved back to New Jersey in October of 2012. Instead, she merely asserts that she first learned of her injuries soon after moving from Florida to New Jersey. See Pl.'s Opp. Br., at 6, D.E. 32. None of Plaintiff's alleged injuries could have occurred without the implantation surgery, which set in motion the other key events in this case, including the device's alleged eventual failure. As a result, the Court concludes that a substantial part of the events concerning the product liability claims mainly at issue here occurred in Florida and not in New Jersey. See, e.g., Parlodel Litig., 22 F. Supp. 2d at 326.

### B. In Personam Jurisdiction

Essentially, Plaintiff argues that general and specific jurisdiction may be exercised in this district because Uroplasty: (i) markets its products online, and therefore in New Jersey; (ii) promotes its products at national conferences, which are attended by New Jersey physicians; and (iii) holds meetings nationwide, which are attended by New Jersey physicians. See Smith Cert., at ¶¶ 20-22, D.E. 33; Pl.'s Opp. Br., at 4-6, D.E. 32. Plaintiff's arguments nonetheless both fully ignore binding precedent and rely on wholly irrelevant facts. In Daimler, for example, the Supreme Court concluded that no general jurisdiction existed where the subsidiary of an Argentinian company was neither incorporated in California nor did business in that state. See 134 S.Ct. at 761-62 ("If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other

12

State in which [Daimler's subsidiary's] sales are sizable.") (emphasis added).

Just like the corporation in Daimler, Uroplasty lacks "continuous and systematic" affiliations that render the corporation at home in New Jersey. See Id. at 751. Indeed, Uroplasty is a Minnesota medical corporation, with its principal place of business in that same state. See Reynolds Cert., at ¶ 2, D.E. 30; Am. Compl., at ¶ 8, D.E. 23. In addition, Uroplasty: (i) owns no property or bank accounts in this state, and (ii) only has two sales representatives in New Jersey, who have never sold the I-Stop device, which is the product squarely at issue here. See Reynolds Cert., at ¶¶ 4-5, 9. Even more to the point, Dr. Jeffrey Segal, who Plaintiffs allege is Uroplasty's agent and representative, has at "no time . . . worked for or represented Uroplasty, Inc." Compare Am. Compl. at ¶ 9 with Reynolds Cert., at ¶ 8.

For these same reasons, Defendant also cannot be subjected to specific personal jurisdiction in this district. Again, the evidence in the record does not show that Defendant "purposefully directed" business activities at New Jersey. See, e.g., J. McIntyre Machinery, Ltd. v. Nicastro, 131 S.Ct. 2780, 2790-91 (2011) (ruling that specific jurisdiction did not exist over a foreign corporation that owned no property, paid no taxes, did not advertise, and had no employees in New Jersey). Simply put, Defendant's business presence in New Jersey appears tenuous at best. Even though Defendant maintains a website, Plaintiff offers no proof that she purchased the I-Stop device expressly because of any online advertising. Indeed, Plaintiff has offered no evidence as to where the I-Stop device was sold or purchased. There is no dispute, however, that the I-Stop device was surgically implanted in Florida at the time when

13

Plaintiff resided there. See Am. Compl., at ¶ 19; Smith Cert., at ¶ 13; Joint Discovery Letter, at 2, D.E. 17. Thus, the Court cannot properly exercise personal jurisdiction over Uroplasty, who is not "at home" in New Jersey. See Daimler, 134 S.Ct. at 761-62; J. McIntyre, 131 S.Ct. at 2790-91.

### C. Transfer

Because venue in this district is improper, the Court may dismiss or transfer this case. See 28 U.S.C. § 1406(a). Transfer is generally preferred over dismissal under the principle that cases should be tried on their merits. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962). The Court finds that, in the interest of justice, venue would be proper under 28 U.S.C. § 1391(a)(2) in the United States District Court for the Southern District of Florida.

The Southern District of Florida is the proper venue because, as detailed above, the I-Stop device was surgically implanted there. See Am. Compl. at ¶ 19; Smith Cert. at ¶ 13; Joint Discovery Letter, at 2. The Southern District of Florida also has, at a minimum, specific personal jurisdiction over Uroplasty because at the time of Plaintiff's implantation surgery: (i) Uroplasty "purposefully directed" its sale, marketing, and distribution of the I-Stop devices at Florida; (ii) Plaintiff's claims likely arose in Florida because Uroplasty sold, marketed and distributed the device there; and (iii) Uroplasty's intentional business conduct in that state demonstrates that notions of "fair play and substantial justice" will not be violated if this case is adjudicated in Florida. See Marten, 499 F.3d at 296-97; see also LoPiccolo v. American Univ., No. 10-3131, 2011 WL 1196900 at *4 (E.D. Pa. Mar. 31, 2011) (transferring matter because defendants, who resided and worked in Washington D.C. "would all be subject to personal jurisdiction there."); Rister v. Cupon, No. 01-2897, 2001 WL 1085043 at *2 (E.D. Pa. Sept. 17, 2001) (concluding

14

that transfer to the district where defendants were "subject to general and specific personal jurisdiction" was proper).

Furthermore, transfer is appropriate because relevant documents and witnesses are located in Florida. See de Rojas, 204 F.R.D. at 268-69 (granting motion to transfer action where relevant employment records were kept in Missouri rather than New Jersey); see also Gottlieb v. U.S., No. 05-3803, 2006 WL 2591069 at *3 (D.N.J. Sept. 8, 2006) (transferring case from this district to Indiana because "all of the potential witnesses . . . as well as potential third-party defendants" were located there). For instance, records concerning Plaintiff's implantation surgery, and records regarding Defendant's sale, marketing and distribution of the I-Stop medical device, are located in Florida. See Def.'s Mot. to Dismiss, at 21-23. In addition, Plaintiff's surgeons, and Uroplasty's sales representatives responsible for selling the I-Stop device, are located in that district as well. See id.; see also Pl.'s Opp. Br. at 6-7, D.E. 32. Thus, this case should be transferred to the United States District Court for the Southern District of Florida.

### VI.  CONCLUSION

For the reasons set forth above, the Court finds that venue in this district is improper and therefore will transfer this matter to the Southern District of Florida pursuant to 28 U.S.C. § 1406(a)[8] and Fed. R. Civ. P. 12(b)(3).  The Court will deny as moot the motion to dismiss for lack of personal jurisdiction.

**SO ORDERED**

_/s/ Joseph A. Dickson_
**JOSEPH A. DICKSON, U.S.M.J.**

Date: November 07, 2014

cc:  Hon. Ester Salas, U.S.D.J.

---

[8] Defendant Uroplasty, Inc. seeks transfer under 28 U.S.C. § 1404(a), which "presupposes that the court has jurisdiction and that the case has been brought in the correct forum."  Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007).  Because, as explained below, the Court concludes that venue in this district is improper, it will instead transfer this case under 28 U.S.C. § 1406(a).  See id.